# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LYNE WHEELER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-18-49-D |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

# **ORDER**

This matter is before the Court for review of the Report and Recommendation [Doc. No. 20] issued by United States Magistrate Judge Gary M. Purcell pursuant to 28 U.S.C. § 636(b)(1)(B). In this action for judicial review under 42 U.S.C. § 405(g), Judge Purcell recommends affirming the Commissioner's final decision denying Plaintiff's applications for disability insurance and supplemental security income benefits. Plaintiff has filed a timely objection. Thus, the Court must make a *de novo* determination of the specific issues raised by Plaintiff's objection, and may accept, modify or reject the recommended decision. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3).

Briefly stated, the administrative law judge (ALJ) determined Plaintiff is not disabled as defined by the Social Security Act, finding in the sequential analysis as follows: Plaintiff has not engaged in substantial gainful activity since the alleged onset date (R. 19); Plaintiff has severe impairments of degenerative disc disease, seizure disorder, major depressive disorder and generalized anxiety disorder (R. 19); these impairments, however,

do not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 20); Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 CFR § 404.1567(b) and 416.967(b) "except she can never climb ladders, ropes, or scaffolds; can occasionally stoop, crouch, or kneel; should avoid use of dangerous machinery and exposure to unprotected heights; can understand, remember, and carry out simple but not detailed instructions; and can occasionally interact with the public" (R. 21-22); Plaintiff is unable to perform any of her past relevant work; but there are other jobs existing in significant numbers in the national economy that Plaintiff can perform, taking into account her age, education, work experience, and RFC (R. 26).

On appeal to this Court, Plaintiff presents two arguments to justify reversal of the Commissioner's decision: 1) the ALJ failed to weigh the medical opinion of Plaintiff's treating physician, Saria Refai, M.D., concerning Plaintiff's seizure related limitations[1]; and 2) the ALJ misrepresented the nature of Plaintiff's non-compliance with her seizure

---

[1] Specifically, Plaintiff cites to general seizure precautions, which Dr. Refai included in his treatment notes for each visit with Plaintiff:

> Seizure Precautions/Warning: Patient was advised to avoid driving, operating machinery, tall heights, bathing/swimming alone and to avoid any and all activity where sudden loss of consciousness or awareness could result in bodily injury or death to either the patient or an innocent bystander. The patient was advised to comply with OK State Law and to avoid the above mentioned situations. They were advised to continue seizure precaution behavior until free of seizure and/or blackout event for at least 6 months. She should be reevaluated by a physician at that time.

(R. 437, 441, 444, 531).

medication, which led to the ALJ improperly omitting seizure related limitations from Plaintiff's RFC.

In his Report, Judge Purcell carefully addresses these issues based on the administrative record and controlling legal authorities. He concludes that the ALJ's decision not to consider the general seizure precautions in Dr. Refai's treatment notes does not constitute reversible error. Further, he concludes that the ALJ's evaluation of the existing medical and opinion evidence related to Plaintiff's seizure condition was supported by substantial evidence. Judge Purcell also concludes that the ALJ's evaluation of Plaintiff's medication non-compliance was supported by the record. Plaintiff challenges these conclusions in her Objection.

Upon independent review of the record and *de novo* consideration of the issues raised, the Court fully concurs with Judge Purcell's analysis and conclusions. In her Objection, Plaintiff challenges Judge Purcell's finding that the general warning repeated verbatim four times, and never modified, in Dr. Refai's treatment notes is not a medical opinion as defined by Social Security regulations. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); 416.927(a)(1). Aside from general seizure precautions, there is no express statement from Dr. Refai as to Plaintiff's physical restrictions or functional limitations at work. A "true medical opinion" would contain the physician's "judgment about the nature and severity of [Plaintiff's] physical limitations, or any information about what activities

3

[she] could still perform." *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008). The burden was on Plaintiff to provide evidence that supports her allegations of functional limitations. *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (claimant bears the burden of establishing a prima facie case of disability at steps one through four). Accordingly, the Court agrees with Judge Purcell that Plaintiff does not identify any statements of medical opinion by Dr. Refai that the ALJ failed to address.

Further, the ALJ's finding that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), with some exceptions, is supported by substantial evidence in the record. In September 2015, state agency consultant Luther Woodcock, M.D., noted that although Plaintiff does not drive due to seizures, she can make simple meals, care for her son[2], shop weekly and do light household chores. (R. 57). Dr. Woodcock opined that Plaintiff had the RFC to occasionally lift and/or carry up to 20 pounds and frequently lift and/or carry up to 10 pounds. (R. 55). He further opined that Plaintiff could stand and/or walk about six hours in an eight-hour workday, but that she should avoid even moderate exposure to machinery and heights. (R. 56). In November 2015, state agency consultant Herbert Meites, M.D., offered an identical opinion. (R. 80-82). This is consistent with the ALJ's determination that Plaintiff can perform light work but should avoid using dangerous machinery and exposure to unprotected heights. (R. 21-22).

---

[2] The record reflects that Plaintiff is a single parent of a 12-year-old child with special needs. (R. 20, 334, 439).

Additionally, the ALJ's RFC finding is consistent with Dr. Refai's records, which demonstrate that Plaintiff only has seizures when she is not fully compliant with her medication. (R. 25). Plaintiff began treatment with Dr. Refai in November 2015. (R. 435). She reported that eight years prior she had three seizures within a six-month period, which she was told was related to pain medication. (R. 435). After discontinuing the pain medication, the seizures stopped until October 2014.[3] (R. 435). Her primary care physician prescribed 500 mg of Keppra in the morning and 1,000 mg of Keppra in the evewning, but Plaintiff decided to take 500 mg of Keppra twice daily because she thought the Keppra was causing memory loss. (R. 435). Dr. Refai started Plaintiff on 25 mg of Topamax daily to gradually increase to 50 mg twice daily. (R. 437). Dr. Refai advised Plaintiff to gradually taper off the Keppra. (R. 437). An EEG in December 2015 was normal. (R. 434).

On follow-up with Dr. Refai in January 2016, Plaintiff reported that she had two spells of seizure activity since her initial visit two months prior. (R. 439). She did not seek any medical attention after the two spells. (R. 439). She admitted that she had not increased her daily dose of Topamax as prescribed and was only taking half the prescribed dosage. (R. 439).

In April 2016, Plaintiff indicated to Dr. Refai that she had only one spell since her previous visit three months prior, when her Topamax dosage was increased to the previously prescribed levels. (R. 442). Dr. Refai started her on 25 mg of Lamictal daily

---

[3] Plaintiff represented to Dr. Refai at her January 20, 2016 visit that since October 2014, she had one spell every four to six weeks. (R. 439). However, at the September 1, 2016 hearing in front of the ALJ, Plaintiff represented she was experiencing seizures once a month. (R. 37).

5

to be increased to 25 mg twice daily, if no side effects. Dr. Refai advised Plaintiff that "[w]hen she is on Lamictal 25 mg [twice daily], she can lower the dose of Topamax gradually by 25 mg every week and stay on 25 mg [twice daily]." (R. 443).

However, when Plaintiff followed up with Dr. Refai in August 2016, she reported continued seizure activity. (R. 529). She admitted, though, that she had stopped taking Topamax entirely after her last visit due to side effects. (R. 529). She reported taking 25 mg of Lamictal twice daily. (R. 529). Dr. Refai advised Plaintiff to increase her evening dose of Lamictal to 50 mg daily and continue taking 25 mg of Lamictal in the morning. (R. 531).

In her Objection, Plaintiff also asserts that Judge Purcell "misunderstands" her argument concerning non-compliance with Topamax. Although Plaintiff does not disagree with the ALJ and Judge Purcell's finding that she was non-compliant with taking her Topamax, Plaintiff argues that such non-compliance was irrelevant because by April 2016, she was only prescribed Topamax for migraines and not for seizures. Plaintiff's argument regarding this issue completely mistakes the record and Dr. Refai's treatment records.[4]

Dr. Refai wrote in an April 11, 2016 treatment note that he started Plaintiff on 25 mg of Lamictal daily to be increased to 25 mg twice daily, if there were no side effects. (R. 443). Dr. Refai advised Plaintiff that "[w]hen she is on Lamictal 25 mg [twice daily], she can lower the dose of Topamax gradually by 25 mg every week and stay on 25 mg

---

[4] At Pages 6-7, Plaintiff's counsel directly misquotes Dr. Refai's April 11, 2016 treatment notes and mistakes the sequence of Dr. Refai's statements in that report. *Compare* Pl.'s Objection [Doc. No. 21 at 6-7] to (R. 443-444).

[twice daily]." (R. 443). Thus, it is clear from the record that Dr. Refai was still prescribing Plaintiff Topamax for her seizures in April 2016.[5] At her follow-up appointment on August 8, 2016[6], Plaintiff reported that she stopped taking Topamax after her last visit. (R. 529). She reported continued seizure activity. (R. 529). The record is clear that Plaintiff's decision to stop taking Topamax was contrary to Dr. Refai's medical advice. Therefore, the ALJ's assessment of Plaintiff's non-compliance with her medication is supported by substantial evidence.

For these reasons, and the reasons explained by Judge Purcell, the Court finds the ALJ's decision is supported by substantial evidence and is consistent with applicable legal authorities.

IT IS THEREFORE ordered that the Report and Recommendation [Doc. No. 20] is ADOPTED in its entirety. The Commissioner's decision is AFFIRMED. Judgment shall be entered accordingly.

IT IS SO ORDERED this 1st day of November 2018.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[5] It appears that Plaintiff was also taking Topamax for her migraines. (R. 444).

[6] Topiramate is listed under current medications on the August 8, 2016 treatment note. (R. 529). Topiramate is used to treat seizures and is often sold under the brand name Topamax. It is also used to prevent migraine headaches but not to relieve the pain of migraine headaches when they occur. U.S. National Library of Medicine, Medline Plus, https://medlineplus.gov/druginfo/meds/a697012.html (last visited Nov. 1, 2018).

7